IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PATRICK RYAN,  )
        Plaintiff, )
         )
v. ) No. CIV-16-205-R
         )
CORRECTIONS CORPORATION OF )
AMERICA, INC., et al., )
        Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff, a California state prisoner appearing with counsel, has brought this civil rights action pursuant to 42 U.S.C. § 1983. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

In his Complaint filed March 1, 2016 (Doc. # 1), Plaintiff named over 50 Defendants. After Plaintiff was ordered to show cause why he had not served any Defendant within the time required by Rule 4(m), Fed. R. Civ. P., Plaintiff was granted one permissive extension of time to effect service on all Defendants on or before August 26, 2016. See Order (Doc. #10). On August 16, 2016, Plaintiff filed a notice advising the Court that pursuant to Fed. R. Civ. P. 41(a) he was voluntarily dismissing from the action all Defendants except Defendants Corrections Corporation of America, Inc. ("CCA"), Keith Ivens, M.D., and

1

California Department of Corrections and Rehabilitation ("CDCR").[1] Those three Defendants have been served with process. On September 2, 2016, the remaining Defendants caused the filing of a Court-ordered Special Report (Doc. # 21).

On September 27, 2016, and without leave of Court, Plaintiff filed an Amended Complaint (Doc. # 24) pursuant to Fed. R. Civ. P. 15(a)(1)(B). Rule 15(a)(1)(B) permits a litigant to "amend its pleading once as a matter of course within: . . . (B) 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Defendants have not filed a response to the Complaint. Instead, Defendants filed their Motion to Dismiss on September 2, 2016, and certified that Plaintiff was electronically served a copy of the Motion to Dismiss on the same date. See Fed. R. Civ. P. 5(b)(2)(E)(service of a pleading "is complete upon transmission" if done by electronic means).

Plaintiff filed his Amended Complaint on September 27, 2016, 25 days after Plaintiff was served a copy of Defendants' Motion to Dismiss. Because the Amended Complaint was not timely filed under Rule 15(a)(1)(B), and Plaintiff did not request leave to file or an extension of time to file an amended complaint, the Amended Complaint (Doc. # 24) could be stricken from the record. Nevertheless, because Defendants have now filed a Motion to Dismiss (Doc. # 26) seeking dismissal of the Plaintiff's claims against them asserted in the

---

[1] Plaintiff improperly names California Department of Corrections as a Defendant in the Amended Complaint. The California state agency named in the Amended Complaint is the California Department of Corrections and Rehabilitation ("CDCR"). CDCR is therefore substituted as the proper party Defendant.

Amended Complaint, the undersigned finds that the Amended Complaint, although not timely filed, supercedes the original Complaint and renders the previous pleading without legal effect. <u>Mink v. Suthers</u>, 482 F.3d 1244, 1254 (10th Cir. 2007).

Before the Court is the Motion to Dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(3), and 12(b)(6) filed on October 18, 2016, by the three remaining Defendants (Doc. # 26).[2] Plaintiff has responded to the Motion to Dismiss. Also before the Court is Plaintiff's Motion to Transfer (Doc. # 25), to which Defendants have responded.

I. <u>Background</u>

Plaintiff, who is an inmate in the custody of CDCR, seeks damages and injunctive relief for alleged deliberate indifference to his serious medical needs (1) while he was confined at the former North Fork Correctional Facility ("NFCF") in Sayre, Oklahoma, under a contract between CCA, which owns the correctional facility previously known as NFCF, and CDCR and, in separate claims, (2) following his transfer from NFCF on May 14, 2014, to one or more California state correctional facilities.

Plaintiff's allegations stem from his alleged injuries sustained on March 1, 2014, in

---

[2]Defendants' previously-filed Motion to Dismiss (Doc. # 22) which addresses only the claims asserted in the Complaint (Doc. # 1) is stricken from the record as it is mooted by the filing of the Amended Complaint and Defendants' second Motion to Dismiss (Doc. # 26).

a slip-and-fall accident at the former NFCF.[3] During Plaintiff's incarceration at the former NFCF during March, April, and May 2014, Defendant Ivens provided medical care to inmates at that facility.

CCA no longer provides care for out-of-state inmates at the correctional facility located in Sayre, Oklahoma. That facility, now known as the North Fork Correctional Center, provides care for inmates in the custody of the Oklahoma Department of Corrections ("ODOC") under a contract between CCA and ODOC.

## II. Plaintiff's Claims

Plaintiff alleges in his Amended Complaint that while he was confined at NFCF on

---

[3]Plaintiff's medical records appearing in the Special Report indicate that R.N. Anson responded to a medical emergency call in HA 229 on March 1, 2014, "for inmate fallen." The nurse reported that Plaintiff denied falling down and stated he was "fine" and "he became dizzy for a split second." The nurse also reported that no injuries were observed and that Plaintiff was "[a]lert and oriented" and "[t]alkative and in a good spirits [sic]." Special Report (Doc. # 21), Ex. 2 at 16-17. Plaintiff first complained of neck pain on March 15, 2014, when he was treated by ARNP Dewbre in the facility's medical unit. Id. at 15-16. Nurse practitioner Dewbre noted that an x-ray of Plaintiff's neck was ordered and that pain medications were prescribed for Plaintiff. Plaintiff was treated by Dr. Ivens at the medical unit on April 7, 2014, when he complained that he "slipped in the shower about 5 weeks ago" and believed he "banged his head on the wall and lost consciousness" after which he experienced stiffness and pain in his neck with numbness radiating down his arm and hand. Id. Ex. 2, at 15. An MRI was ordered by Dr. Ivens. Id. Dr. Engelman noted on May 1, 2014, that the cervical MRI showed "a jumped facet on the left, at C3-C4, with localized cord edema and central stenosis" with "[p]ossible fractures of the articular facets." An urgent neurosurgical consultation was requested. Id., Ex. 2, at 12. Plaintiff was prescribed Tramadol® and given extra mattress and pillows. Id. Plaintiff was transported for an outside neurological consultation on May 8, 2014. The report from the consultant, Dr. Zind, was reviewed by Dr. Ivens and R.N. May the following day, on May 9, 2014, and additional medications were ordered for Plaintiff, including Decadron® and hydrocodone. Id. at 9. On May 9, 2014, Dr. Ivens noted that the recent MRI of Plaintiff's cervical spine showed "evidence of old fracture at C3-C4 plus cord edema and compression" and that the neurosurgical consultant, Dr. El-Zind, believed Plaintiff was "stable to return to CA if he goes soon." Id. at 8. Dr. Ivens also noted that transfer papers for Plaintiff were completed and a cervical collar was prescribed "for the trip back." Id.

4

March 1, 2014, he was forced and directed by CCA staff to use a defective shower that had been "condemned" by "inspectors with the CDC [sic]" and that bore "a warning sign on the shower prohibiting its use by facility inmates." Plaintiff alleges that he fell in the shower due to "an inadequate drain leaving standing water" in the shower and suffered neck and spinal injuries caused by the fall. Plaintiff further alleges in the Amended Complaint that he complained of neck pain to CCA staff after the fall but Defendant "CCA took no steps to reasonably or adequately evaluate the injury" despite the obvious nature of his injuries. Plaintiff alleges that he was later transported to a California correctional facility and that following his transfer he received inadequate medical treatment for his injuries.

In his Amended Complaint, Plaintiff sets forth five separate claims of deprivations under 42 U.S.C. § 1983. In his first claim, Plaintiff alleges that the conditions of his confinement at the former NFCF facility were unconstitutional on or about March 1, 2014, when he slipped, fell, and injured his neck and spine in a shower. In his second claim, Plaintiff alleges that "CCA, its agents and employees" were deliberately indifferent to his serious medical needs at NFCF with respect to "an objectively serious traumatic injury to his neck" and denied him adequate medical care for his injuries. In his third claim, Plaintiff alleges that "CCA, its agents and employees," with "actual knowledge of the injury . . . delayed providing adequate medical care" to Plaintiff, resulting in either worsening of the injury or further injury and damages that would not have occurred but for the indifference and delay. With respect to these claims, Plaintiff alleges that Defendant "CCA has an inherent and well-established policy, practice, custom or usage to delay or deny adequate

5

medical care, or to assure the delivery of medical care to Plaintiff is consistent with the appropriate standards."[4]

In ground four, Plaintiff alleges that Defendant "CDC [sic] has denied and continued to deny adequate medical care for [Plaintiff], to include denying [Plaintiff] the diet" he needs to treat celiac disease and anemia. Plaintiff seeks "prospective declaratory and injunctive relief to compel the CDC [sic] to provide a diet that does not subject [Plaintiff] to a substantial risk of serious harm."

In ground five, Plaintiff alleges that Defendant CCA is liable to him under 42 U.S.C. § 1983 for failing to adequately train and supervise its staff to recognize and treat injuries that are "closely related to the ultimate injuries and damages suffered by [Plaintiff] . . . ."

For all of these claims, Plaintiff seeks compensatory and punitive damages and equitable relief.

III. Exhaustion of Administrative Remedies

Defendants CCA, Ivens, and CDCR have moved to dismiss the cause of action against them on several grounds, including on the basis that Plaintiff failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act ("PLRA"), enacted in 1996, requires a prisoner to exhaust his or her administrative remedies prior to filing a lawsuit in federal court challenging prison conditions under 42 U.S.C. § 1983 or any other Federal law. 42 U.S.C.

---

[4]This allegation is set forth in the Complaint as a separate claim of "Entity Liability," although it actually alleges only an element of a § 1983 claim against Defendant CCA.

§ 1997e(a). "[E]xhaustion requirements are designed to ... give the agency a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). This mandatory exhaustion requirement, see Jones v. Bock, 549 U.S. 199, 211 (2007), applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002).

To properly exhaust administrative remedies, a plaintiff must "us[e] all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

In their Motion to Dismiss, Defendants CCA, Ivens, and CDCR assert as grounds for dismissal, *inter alia*, that Plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) on any of his claims prior to filing this § 1983 action. Having asserted the affirmative defense of failure to exhaust administrative remedies, Defendants bear the burden of proof. See Jones v. Bock, 549 U.S. 199, 215-216 (2007)(holding failure to exhaust administrative remedies is affirmative defense); Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant.").

"Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him. . . ." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011). Thus, if Defendants show that Plaintiff failed to exhaust his administrative remedies, it would be Plaintiff's burden to show that those remedies were not available to him.

Defendants have provided uncontroverted evidence concerning the administrative remedial procedure available to California prisoners such as Plaintiff. The rules for exhaustion in the case before the Court come from this grievance system. See Kikumura v. Osagie, 461 F.3d 1269, 1282 (2006)("Since § 1997e(a) does not specify the procedural requirements necessary for exhaustion, the rules come from the prison grievance systems themselves - state law for state prisons, federal administrative law for federal prisons.")(internal quotation marks omitted).

The CDCR provides California state inmates and parolees, including those California inmates housed in an out-of-state correctional facility, the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, §§ 3379(a)(1), 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must submit his or her complaint on CDCR Form 602 and proceed through several levels of appeal: (1) first level appeal filed with one of the institution's appeal coordinators, (2) second level appeal filed with the institution head or designee, and (3) third level appeal filed with the CDCR director

or designee. Id. § 3084.7. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. Id. § 3084.7(d)(3).

This three-step procedure satisfies the exhaustion requirement under § 1997e(a). Id. §§ 3084.1(b), 3084.7(d)(3); Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997). If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted. Reyes v. Smith, 810 F.3d 654, 656, 658 (9th Cir. 2016) (agreeing with all "sister" circuits in so holding).

In submitting a grievance, an inmate is required to "list all staff member(s) involved and shall describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3). Further, the inmate must "state all facts known and available to him/her regarding the issue being appealed at the time," and "describe the specific issue under appeal and the relief requested." Id. §§ 3084.2(a), (a)(4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "[u]pon first having knowledge of the action or decision being appealed." Id. § 3084.8(b).

Defendants' Motion is supported by several affidavits of correctional officials concerning the issue of exhaustion.[5] Defendants have provided the affidavit of Ms. Aguirre,

---

[5]Plaintiff contends in his responsive pleading that such affidavit are not appropriate for consideration by the Court. Plaintiff relies on a recent decision by the Tenth Circuit Court of Appeals in Williams v. Wilkinson, No. 15-7075, __ Fed. App'x __ (10th Cir. 2016)(unpublished op.). In that decision, the Court addressed in a footnote the defendants' submission of an affidavit in support of its motion to dismiss the action for failure to exhaust administrative remedies. Contrary to Plaintiff's argument, the court did not find that the submission of the affidavit was improper because it was considered in connection with a motion to dismiss. Rather, the court found that the

an analyst with the CDCR Corrections Services Private Prison Compliance and Monitoring Unit, who avers that she conducted a search of CDCR's Health Care Appeals Tracking System for records related to any appeal filed by Plaintiff and that Plaintiff did not file any appeals at the second and third levels of the grievance procedure during the time period of March 2014 through March 2016. Motion to Dismiss (Doc. # 26), Ex. 4 (Affidavit of Lynn Aguirre, Private Prison Monitoring and Compliance Unit).

Defendants have also provided the affidavit of Ms. Brown, CDCR's litigation coordinator for the Contract Beds Unit of CDCR and a custodian of records for the Contract Beds Unit. Ms. Brown avers that she conducted a search of the records of CDCR's Contract Beds Unit for appeals filed by Plaintiff regarding a maintenance issue with a shower at NFCF during March and April 2014 and found no second level appeals submitted by Plaintiff. Motion to Dismiss (Doc. # 26), Ex. 5 (Affidavit of Naomi Brown, Contract Beds Unit).

Finally, Defendants have provided the affidavit of Ms. Dunker, a CCA employee, who avers that she reviewed the former NFCF's administrative grievance records tracking system for February 1, 2014 through August 31, 2014, and found no grievances were filed during that time period by Plaintiff. Motion to Dismiss (Doc. # 26), Ex. 3 (Affidavit of Cheryl-Lynn Dunker).

The former NFCF facility's handbook provided inmates with written instructions concerning CDCR's administrative grievance procedure, including specific instructions for

---

district court erred in relying on the affidavit because the affidavit was based on inadmissible hearsay. Id. at fn. 2. Plaintiff's argument is not persuasive.

filing a "Medical Grievance" at the facility. Motion to Dismiss (Doc. # 26), Ex. 1 (North Fork Correctional Facility Handbook). Defendants have shown that Plaintiff failed to exhaust administrative remedies concerning any of the claims asserted in his Complaint.

In Plaintiff's Amended Complaint, Plaintiff alleges, without specific supporting facts, that "the policy of exhaustion at NFCF is [sic] different from the practice of exhaustion" and "the grievance process at NFCF was so confusing that no reasonable prisoner could understand, discern or navigate it consistent with the holding in *Ross v. Blake*, 578 U.S. __, 136 S. Ct. 1850 (2016)." Amended Complaint, at 2. In Plaintiff's responsive pleading, Plaintiff does not provide any evidence to support the assertion that NFCF officials obstructed his ability to exhaust the available administrative grievance procedure. Plaintiff contends that he has not had the opportunity to engage in discovery, but Plaintiff does not provide evidence that he has attempted discovery or that his requests for copies of his own administrative grievance documents have been denied.[6]

In Ross, the Supreme Court addressed the issue of when administrative remedies for a prisoner are "available" under 42 U.S.C. § 1997e(a) and posited several possible circumstances in which an administrative remedial scheme might become unavailable to a prisoner, thereby excusing the requirement of exhaustion. Ross, 136 S.Ct. at 1859-60. Plaintiff, however, has failed to provide any evidence that his efforts to exhaust the well-

---

[6]Plaintiff's own institutional records of exhaustion of administrative remedies would be available to him despite the provision in the Order Requiring Special Report foreclosing discovery until the filing of the Special Report. In any event, the Special Report was filed in September 2016.

established and clearly-documented administrative remedy procedure provided by the CDCR were somehow obstructed by the action or inaction of prison officials. Plaintiff alleges in his responsive pleading that he was "lured . . . into a belief that he would receive treatment because treatment was provided in incremental steps" and that he had no need to exhaust administrative remedies after he was transferred back to a California correctional facility. Plaintiff's conclusory allegation provides no evidence of any misrepresentation or intimidation by prison officials that would thwart him from taking advantage of the grievance procedure available to him and his transfer did not absolve his obligation to complete the exhaustion procedure.

Thus, Plaintiff has failed to satisfy his burden of demonstrating that those administrative remedies were unavailable to him. See Mitchell v. Figueroa, 489 Fed. App'x 258 (10th Cir. 2012)(unpublished op.)(affirming dismissal of California state prisoner's 42 U.S.C. § 1983 action without prejudice for failure to exhaust administrative remedies provided by CDCR). Consequently, Defendants' Motion to Dismiss should be granted, and the cause of action should be dismissed without prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a).[7]

IV. Sovereign Immunity

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III of the Constitution," unless a State has unequivocally

---

[7]In light of this recommendation, the undersigned declines to consider the merits of Defendants' remaining grounds for dismissal.

expressed a waiver of its Eleventh Amendment immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984). Title 42 U.S.C. § 1983 does not itself abrogate the sovereign immunity of a State. See Kentucky v. Graham, 473 U.S. 159, 169 n. 17 (1985)(§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity"); Quern v. Jordan, 440 U.S. 332, 345 (1979)(§ 1983 does not on its face waive States' sovereign immunity).

Thus, unless California has consented to be sued in federal courts under 42 U.S.C. §1983, the Eleventh Amendment bars Plaintiff's § 1983 action seeking damages and equitable relief from Defendant CDCR. Pennhurst, 465 U.S. at 100-01 (holding "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment, . . . regardless of the nature of the relief sought"); Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, ... or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity."). California has not waived its Eleventh Amendment immunity. See Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); BV Engineering v. Univ. of Calif., 858 F.2d 1394, 1396 (9th Cir. 1988).

Although "[i]n an injunctive or declaratory action grounded on federal law, the State's immunity *can* be overcome by naming state officials as defendants," Graham, 473 U.S. at

169 n. 18, Plaintiff has not named a California state official as a Defendant. Consequently, Defendant CDCR's Motion to Dismiss it from the instant § 1983 action on the basis of sovereign immunity should be granted.

V. Motion to Transfer

Plaintiff has filed a Motion for Transfer (Doc. # 25), seeking to transfer to the United States District Court for the Eastern District of California "all claims" against CDCR or "the claims against CDCR involving prospective and injunctive relief." Pursuant to 28 U.S.C. §1406(a), if the Court determines that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Pursuant to 28 U.S.C. § 1631, a district court may transfer a civil action whenever the "court finds that there is a want of jurisdiction, . . . if it is in the interest of justice." Plaintiff, of course, chose to file his action in this Court, and as the party seeking a transfer of the action to another court it is the Plaintiff who has the burden of proving that transfer is in the interest of justice.

As to this 42 U.S.C. § 1983 action, venue is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located;" or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 139(b)(1)-(2). In the Complaint, Plaintiff alleges that Defendant CCA is a Maryland corporation that houses California inmates in out-of-state facilities, "including the North Fork Correctional Facility ("NFCF") located in Sayre, OK" under a services contract with CDCR. Complaint (Doc. # 1), at 3-4. Plaintiff further alleges in the Complaint

14

that Defendant CDCR is a California state agency that contracted with CCA to house inmates within the State of Oklahoma, "thereby availing itself [of] the jurisdiction of this Court." Complaint (Doc. # 1), at 4. Defendant Ivens is alleged in the Amended Complaint to be an agent and/or employee of either CCA or the CDCR. Finally, Plaintiff alleges in the Amended Complaint that "[t]he events complained of herein occurred in the judicial district for the United States District Court for the Western District of Oklahoma."[8] Despite these allegations in Plaintiff's pleading, Plaintiff alleges in the Motion to Transfer that its cause of action against CDCR for damages related to "post-injury treatment detailed in the Complaint" should be transferred to the California district court because "the occurrence of these events took place in California" and Plaintiff's claims against CDCR would be time-barred if Plaintiff were required to file a new action in California.

The undersigned finds that the Motion to Transfer is moot, however, and a transfer would not serve the interest of justice because Plaintiff has not exhausted his administrative remedies as to any of the claims asserted in the Amended Complaint and because Defendant CDCR is entitled to sovereign immunity with respect to Plaintiff's claims against it, as previously found.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants' Motion to Dismiss (Doc. # 26) the action should be GRANTED and the cause of action should be

---

[8] These same allegations appear in Plaintiff's Amended Complaint (Doc. # 24).

DISMISSED WITHOUT PREJUDICE for failure to exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a) and, as to Defendant CDCR, on the ground of sovereign immunity. Further, Plaintiff's Motion to Transfer (Doc. # 25) should be DENIED.

The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by December 12th, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 22nd day of November, 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE